FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 05, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMY H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No.   1:21-cv-3163-EFS <br><br> **ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND REMANDING THE MATTER FOR PAYMENT OF BENEFITS** |

Plaintiff Amy H. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred when analyzing the medical opinions' manipulative limitations, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for payment of benefits for the closed period.[2]

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] The Court directed the parties to file supplemental briefs; each party did so. ECF Nos. 19–21.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

# I.    Background

Plaintiff seeks a closed period of disability from the time she turned 18 on August 1, 2009, to September 30, 2011, due to right-arm idiopathic pain, spondyloarthropathy, reflex neurovascular dystrophy, obesity, and inflammatory arthritis.[3] Three different ALJs denied Plaintiff's disability application for various reasons.[4] Plaintiff challenges the recent denial of benefits by ALJ Cecelia LaCara. ALJ LaCara found that Plaintiff could perform sedentary work with the additional limitations:

> the claimant can perform occasional climbing of ramps or stairs; no climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; frequent bilateral reaching to the front and the side; no bilateral overhead reaching, i.e., past shoulder level and above; frequent bilateral handling and fingering; and avoid concentrated exposure to extreme cold, extreme heat, respiratory irritants, and excessive vibration, and all unprotected heights and hazardous machinery, including the operational control of moving machinery.[5]

Based on this RFC and the vocational testimony, the ALJ determined Plaintiff could work as a telephone salesclerk, document preparer, or final assembler.[6]

---

[3] AR 1714.

[4] AR 1–6, 16–37, 838–52, 1711–36, 1792–93. The first two denials were reversed, and the third denial is before this Court for review.

[5] AR 1718.

[6] AR 1726.

1

2        1.    <u>Medical Opinions</u>

3    In reaching her non-disability determination, the ALJ reviewed the six

4    medical opinions in the record, three of the opinions were issued during the alleged

5    disability period and three thereafter.

6    First, in 2010, Dr. Guillermo Rubio limited Plaintiff to standing/walking 6

7    hours, occasionally lifting and/or carrying 20 pounds, frequently lifting and/or

8    carrying 10 pounds, and occasionally pushing and/or pulling with the right upper

9    extremity.[7] Although pushing/pulling was limited, Dr. Rubio did not mark any

10   limitations for reaching, handling, fingering, and feeling. The ALJ gave Dr. Rubio's

11   reviewing opinion some weight because it was "somewhat consistent with the

12   objective findings, treatment records, and the claimant's demonstrated functional

13   abilities."[8] Subsequent studies in February 2011 continued to show mild right

14   median neuropathy consistent with mild carpal tunnel syndrome and right

15   posterior interosseous neuropathy,[9] and physical therapy in 2011 revealed reduced

16   right elbow extension and right shoulder movement.[10]

17   After reviewing the record in March 2011, Dr. Norman Staley opined

18   Plaintiff could stand/walk for 6 hours, was limited to occasionally lifting and/or

---

[7] AR 673–79.

[8] AR 1723.

[9] AR 542–57.

[10] *See, e.g.*, AR 548, 551, 561–62, 796–97, 806.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

carrying 20 pounds and frequently lifting and/or carrying 10 pounds, and could push/pull consistent with the lifting and carrying restrictions.[11] Dr. Staley limited Plaintiff's fingering with her right hand and limited her reaching and handling with both upper extremities to occasional due to her carpal tunnel syndrome and bilateral shoulder impairments.[12] The ALJ gave Dr. Staley's opinion significant weight, but noted that the evidence after Dr. Staley's opinion established the need to limit Plaintiff to sedentary work.[13]

After reviewing the record in July 2011, Dr. Alfred Scottolini imposed the same limitations as Dr. Staley, while commenting that Plaintiff's symptoms were "slowly improving following release surgery" and that her joints were "free of inflammation and have [full range of motion]."[14] The ALJ gave significant weight to Dr. Scottolini's opinion, but again noted that the subsequent record established the need to limit Plaintiff to sedentary work.[15]

In March 2016, Dr. Ryan Gorji examined Plaintiff for chronic low-back pain, observed decreased range of motion on back flexion and extension, and noted that

---

[11] AR 79–82, 90–92.

[12] AR 81, 91

[13] AR 1723.

[14] AR 103, 104.

[15] AR 1723.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

imaging showed T8-T9 disc herniation and degenerative changes at T7-T8.[16] He restricted Plaintiff to sedentary work, lifting 10 pounds maximum, and frequent lifting and carrying of lightweight items.[17] The ALJ gave some weight to Dr. Gorji's opinion because it was consistent with the longitudinal medical evidence, which "indicates that the claimant could perform at least sedentary work."[18]

Days later, Dr. Brent Packer reviewed Dr. Gorji's treatment note and recommendations. He agreed with Dr. Gorji's recommendation that Plaintiff be limited to sedentary work, noting that Plaintiff was limited to standing or walking 2–4 hours per day.[19] The ALJ gave some weight to Dr. Packer's opinion because it indicated that Plaintiff could perform sedentary work; the ALJ also noted that Dr. Packer did not impose any significant non-exertional restrictions or gross or fine motor skills restrictions.[20]

In July 2018, Dr. William Drenguis examined Plaintiff. He recommended that Plaintiff be limited to 4 hours of standing/walking, lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, occasional reaching,

---

[16] AR 1582–83; *see* AR 1123, 1163.

[17] AR 1582–84.

[18]  AR 1725.

[19] AR 1694–98.

[20] AR 1724.

and frequent handling, fingering, and feeling.[21] The ALJ gave some weight to Dr. Drenguis' opinion because it was consistent with the longitudinal medical evidence, which indicates that Plaintiff could perform sedentary work.[22]

### 2.   Vocational Expert Testimony

During the 2021 hearing, the vocational expert testified that an individual with the RFC the ALJ crafted could perform work as a telephone salesclerk, document preparer, or final assembler.[23] The vocational expert also testified that an individual would not be competitively employed if the individual was limited to unskilled sedentary work *and* occasional reaching, handling, or fingering.[24]

### 3.   Conceded Error

The Commissioner concedes the ALJ erred by giving significant weight to the two reviewing medical opinions of Dr. Staley and Dr. Scottolini and then crafting an RFC that did not adopt their opined occasional bilateral reaching/handling limitation and limited fingering with the right hand. Instead, the sedentary RFC permitted "frequent bilateral reaching to the front and the side;

---

[21] AR 1606–10.

[22] AR 1725.

[23] AR 1755.

[24] AR 1756–57 ("When we have sedentary work, use of the hands and arms is essential, bilaterally, and is typically at the frequent level.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

no bilateral overhead reaching, i.e., past shoulder level and above; [and] frequent bilateral handling and fingering."[25]

Because of the conceded error, the Court need not address each of Plaintiff's arguments. Instead, the Court focuses on whether further proceedings are required to resolve evidentiary disputes on remand, as the Commissioner suggests, or whether benefits are to be awarded on remand, as Plaintiff suggests.

## II.    Analysis

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course.[26] Three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[27]

---

[25] AR 1718.

[26] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[27] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

When these factors are satisfied, the decision whether to remand for benefits or more proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[28]

4

5

6

7

Here, the parties agree the second factor is satisfied: the ALJ erred by giving significant weight to Dr. Staley's and Dr. Scottolini's manipulative limitations while crafting an RFC that did not fully adopt the opined manipulative limitations. The parties are not in agreement as to the first and third factors.

8

1.    First factor: further administrative proceedings will not be useful.

9

10

11

12

"Administrative proceedings are generally useful where . . . there is a need to resolve conflicts and ambiguities."[29] Here, the record has been fully developed for the at-issue period: August 1, 2009, to September 30, 2011. No additional medical opinions, testing, or records are needed for this decade-past period.

13

14

15

16

17

18

19

Yet, the Commissioner argues that further administrative proceedings are needed because it is unclear whether the ALJ intended to give significant weight to each aspect of Dr. Staley's and Dr. Scottolini's opinions, as the ALJ's recitation of the medical history reflects some normal findings as to Plaintiff's shoulder, arms, and hands during the at-issue period. The Court disagrees that the ALJ should be given another opportunity to revisit the significant weight assigned to Dr. Staley's

20

21

22

23

[28] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

[29] *Id.* at 1101.

and Dr. Scottolini's opined manipulative limitations. As discussed by the ALJ's recitation of the medical history, the treatment record during the relevant period includes both normal and abnormal findings for Plaintiff's shoulder, arms, and hands. For instance, the ALJ highlighted:

- "[I]n August 2009, an EMG and NCV was abnormal, as it provided evidence for mild inactive right radial mononeuropathy of the posterior interosseous nerve at or distal to the level of the arcade of Frohse."[30]

- "[T]reatment notes indicated that the claimant underwent a decompression of the right radial nerve in her right upper extremity" in August 2009.[31]

- "In December 2010, treatment notes indicated that the claimant had right upper extremity pain, which had persisted after her radial tunnel decompression in August 2009" and that "the claimant had decreased sensation to light touch over the radial aspect of her forearm that extended from the surgical scar to the musculotendinous junction."[32]

---

[30] AR 1719.

[31] AR 1719.

[32] AR 1720.

- In February 2011, treatment notes state that Plaintiff had right arm pain, mainly along her forearm.[33]

- "[A]n EMG and NCV was abnormal, as it revealed right median mononeuropathy across the wrist, as well as findings consistent with right posterior interosseous neuropathy, which was chronic and inactive, and findings of reduced right radial amplitude compared to previous study."[34]

- In June 2011, treatment notes showed "decreased range of motion of her right shoulder in all directions."[35]

- "[T]reatment notes from July and August 2011 indicated that . . . she was unable to extend her forearm at the right elbow completely and she had decreased range of motion in her right shoulder, but she did not have any arthritis or joint swelling."[36]

Dr. Staley and Dr. Scottolini reviewed the medical file—at least up to their record review in March 2011 (Dr. Staley) and July 2011 (Dr. Scottolini)—with treatment records indicating that Plaintiff's inflammatory conditions challenged her providers, as she often lacked external evidence of inflammation related to her

---

[33] AR 1720.

[34] AR 1721.

[35] AR 1721.

[36] AR 1721.

surgery-confirmed inflammatory conditions.[37] Nonetheless, based on their record review, Dr. Staley and Dr. Scottolini opined that Plaintiff's carpal tunnel syndrome, spondyloarthropathy, reflex neurovascular dystrophy, and arthritis required limiting Plaintiff's reaching and handling with both arms to occasionally and fingering with her right hand.[38] Dr. Scottolini mentioned that Plaintiff was subject to autoimmune diseases, and he recommended these limitations even though he noted that Plaintiff was "much improved. Joints free of inflammation and have [free range of movement]" and "slowly improving following release surgery."[39] Dr. Scottolini issued his opinion two months before the end of the alleged disability period.

Like Dr. Staley and Dr. Scottolini, Dr. Rubio reviewed the record during the relevant period and, although he did not recommend manipulative limitations, he

---

[37] *See, e.g.*, AR 387–90, 405, 411.

[38] Although Dr. Staley and Dr. Scottolini opined occasional manipulative limitations, Plaintiff was not considered disabled at the initial and reconsideration levels of administrative review because Dr. Staley and Dr. Scottolini opined that Plaintiff could stand/walk for 6 hours and therefore could perform light work with the manipulative limitations. Yet, the ALJ discounted the standing/walking portion of their opinions because the evidence after their assessments established that Plaintiff was limited to standing/walking less than 6 hours a day. AR 1723.

[39] AR 103–05.

limited Plaintiff to occasional pushing and pulling with her right upper extremity.[40] Moreover, in August 2010, a Washington State administrative judge found that Plaintiff was unable to work full time because, amongst other limitations, "[s]ometimes [her] hand becomes stuck in a trigger position," she "suffers frequent inflammations that are unpredictable," and she suffers "from a permanent chronic severe physical impairment."[41] And ALJ Verrell Dethloff in 2012 limited Plaintiff to occasional bilateral reaching or handling in front and laterally, with no overhead reaching with the right arm.[42]

The Commissioner fails to establish that further proceedings are necessary to permit the ALJ an additional opportunity to explain why the ALJ's manipulative limitations are correct rather than Dr. Staley's and Dr. Scottolini's manipulative limitations.[43] Dr. Staley and Dr. Scottolini had the opportunity to review the

---

[40] AR 671–79.

[41] AR 329–30.

[42] AR 23.

[43] *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct."). *See Garrison*, 759 F.3d at 1021–22 ("Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the

medical record—and the ALJ gave their opinions significant weight. The Court credits their manipulative limitations.

### 2.   Third factor: a finding of disability results.

The vocational expert testified that sedentary work requires bilateral use of hands and arms on a frequent basis and that a restriction to occasional reaching and handling precludes sedentary work.[44] Nonetheless, the Commissioner argues that, even if Dr. Staley's and Dr. Scottolini's manipulative limitations are credited, a finding of disability does not result because the Dictionary of Occupational Title (DOT) indicates that only occasional reaching, handling, or fingering is required for a telephone salesclerk.[45] Based on this conflict between the DOT and the vocational expert's testimony, the Commissioner argues that the matter must be remanded

---

objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis."); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) ("An ALJ's decision cannot be passed on *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

[44] AR 1756–57.

[45] *See* DOT No. 237.367-014, 1991 WL 672186 (Jan. 1, 2016).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

pursuant to Social Security Ruling 00-4p[46] to permit the ALJ to explain how the conflict between the DOT and the vocational expert's testimony is to be resolved. Yet, this record contains not only testimony from the vocational expert in 2021 that unskilled sedentary jobs require, minimally, frequent reaching, handling, and fingering, but also similar testimony from a different vocational expert in 2019. [47] No further record development is needed. When Dr. Staley's and Dr. Scottolini's manipulative limitations are credited, a finding of disability results as two vocational experts testified that unskilled sedentary occupations require more than occasional reaching, handling, and fingering.

### III.    Conclusion

Remand for an award of benefits for the closed period is appropriate.[48] Plaintiff filed for disability almost twelve years ago. The Social Security

---

[46] SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

[47] AR 891 ("I think the occasional reaching, handling and fingering would rule out unskilled jobs at the sedentary level."); *see also* AR 890 (testifying "because my impression would be that the dispatcher jobs in general would probably nowadays require frequent handling, fingering and feeling, or at least handling and fingering" to explain the difference between his testimony and the DOT that called for occasional handling and fingering and frequent reaching).

[48] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

Administration ALJs have had three opportunities to adequately explain their disability denials but have failed to do so each time. Based on the medical opinions and the vocational testimony, no further record development is needed.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits for the closed period from **August 1, 2009, to September 30, 2011**.

4.    The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 5th day of January 2023.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge